Mary Jo O'Neill, AZ Bar No. 005924
Laurie Jaeckel, CO Bar No. 41447
Michael Yeabsley, AZ Bar No. 035244
**EQUAL EMPLOYMENT**
**OPPORTUNITY COMMISSION**
**Phoenix District Office**
3300 North Central Ave., Suite 690
Phoenix, Arizona 85012
Telephone: (602) 661-0060
Fax: (602) 640-5071
Email: mary.oneill@eeoc.gov
       lauren.jaeckel@eeoc.gov
       michael.yeabsley@eeoc.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br>　　　　Plaintiff,<br><br>　　v.<br><br>HHS ENVIRONMENTAL SERVICES LLC,<br>　　　　Defendant. | **COMPLAINT**<br><br>**CIVIL ACTION NO. 2:24-cv-00721**<br><br>**JURY DEMANDED** |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the

Civil Rights Act of 1991, to correct unlawful employment practices on the basis of sex

and/or retaliation and to provide appropriate relief to Charging Party Maria Lopez and a class of other aggrieved individuals who were adversely affected by such practices during their employment with HHS Environmental Services, LLC ("Defendant" or "HHS"). As alleged with greater particularity in the paragraphs below, HHS allowed ongoing sexual harassment despite repeated complaints by Lopez and other aggrieved individuals. HHS also subjected Lopez to retaliation by assigning her extra work after she complained about the sexual harassment, and HHS retaliated against other aggrieved individuals who complained about sexual harassment by terminating their employment shortly after their complaints. The sexual harassment, including sexual assaults, and retaliation experienced by Lopez ultimately led to her constructive discharge.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§ 2000e-5(f)(1) and (3) ("Title VII") and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Utah.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission" or "EEOC"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4. At all relevant times, HHS has continuously been doing business in the State of Utah and the City of Salt Lake City and has continuously had at least 15 employees.

5. At all relevant times, HHS has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## ADMINISTRATIVE PROCEDURES

6. More than thirty days prior to the institution of this lawsuit, Maria Lopez filed charge number 35C-2018-00020 with the Commission alleging violations of Title VII by HHS.

7. Lopez dually filed her charge of discrimination with the Utah Antidiscrimination and Labor Division ("UALD") and the EEOC on October 6, 2017.

8. HHS received the Notice of Charge of Discrimination informing it of Lopez's charge of discrimination on or around November 7, 2017.

9. The Commission received the charge from the UALD on March 1, 2020, after the UALD completed its investigation.

10. HHS received notice that the EEOC was investigating the charge on May 20, 2020.

11. The Commission investigated Lopez's charge of discrimination.

12. On May 28, 2024, the Commission issued HHS a Letter of Determination finding reasonable cause to believe Title VII was violated.

13. The Letter of Determination invited HHS to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

14. The Commission engaged in communications with HHS to provide it the opportunity to remedy the discriminatory practices described in the Letter of Determination.

15. On August 1, 2024, the Commission issued HHS a Notice of Failure of Conciliation advising HHS that the Commission was unable to secure from HHS a conciliation agreement acceptable to the Commission.

16. All conditions precedent to the institution of this lawsuit have been fulfilled.

## FACTUAL ALLEGATIONS

### HHS and the Salt Lake City Medical Center

17. HHS is a nationwide company based in Texas that provides housekeeping, food, and facility management services to healthcare companies and other industries.

18. The harassment in this case occurred at the Salt Lake Regional Medical Center, which has since been renamed the Holy Cross Hospital, in Salt Lake City, Utah.

19. HHS provided janitorial and other facility management services to the Salt Lake Regional Medical Center.

### Maria Lopez

20. Maria Lopez began working for HHS as a housekeeper at the Salt Lake Regional Medical Center on or around August 6, 2016.

21. During her employment, Lopez was repeatedly sexually harassed by Donald "Donaldo" Gonzalez.

22. HHS lists Gonzalez's position in its records as a housekeeper or "Floor/Trash/Utility."

23. Throughout 2016, Gonzalez made offensive sexual comments to Lopez nearly every time that they encountered each other at work.

24. These comments included comments in Spanish about Lopez's breasts and buttocks, including a comment comparing Lopez's breasts to large melons.

25. On another occasion, Gonzalez commented to Lopez in a sexually suggestive way that, "If you squeeze a papaya, it will squirt."

26. On a different occasion, an HHS employee overheard Gonzalez making inappropriate sexual comments and admonished Gonzalez by telling him to be more respectful to Lopez.

27. In 2016, Lopez reported the sexual harassment by Gonzalez several times to her supervisor Christian Garcia.

28. On at least one occasion in 2016, Supervisor Garcia reported the harassment to HHS Director Matt Risenmay.

29. Director Risenmay did not investigate the allegations of sexual harassment or subject Gonzalez to discipline because of Lopez's complaints.

30. Even after Lopez's complaints, Gonzalez's sexual harassment of Lopez continued throughout 2016.

31. On or around December 2016, Gonzalez snuck up behind Lopez while she was in a supply closet and pressed his penis against her buttocks.

32. When Lopez told him to get off of her, Gonzalez told her he just wanted to give her a hug.

33. Lopez responded: "A person does not ask for a hug from behind and I did not give you permission."

34. Lopez immediately reported the physical assault by Gonzalez to Supervisor Garcia.

35. In addition, Lopez reported the sexual harassment by Gonzalez to HHS's Human Resources Department by phone and left a voicemail.

36. Lopez did not receive any response from Human Resources to her voicemail complaining about the recent sexual assault by Gonzalez.

37. After Lopez did not receive a response from HHS's Human Resources Department, she reported the sexual harassment to the Salt Lake Regional Medical Center's Human Resources Department.

38. Lopez explained to the Medical Center's Human Resources department that she had come to them because she had already tried reporting the sexual harassment to HHS supervisors and HHS's Human Resources Department, yet nothing had been done to address the sexual harassment.

39. The Medical Center's Human Resources Department advised Lopez it would convey her complaint to HHS management.

40. Despite Lopez's reports of sexual harassment, the sexual harassment by Gonzalez continued unabated.

41. In 2017, Lopez was introduced to new HHS Director Laurie Madsen.

42. When Lopez was first introduced to Madsen, Lopez immediately raised the sexual harassment by Gonzalez and complained to Madsen that nothing was being done to address it.

43. Supervisor Garcia also had at least one conversation with Madsen in which he informed her that other HHS employees had complained to him about Gonzalez sexually harassing them and these employees considered Gonzalez to be a "creep."

44. Despite these reports, Madsen did not take action to investigate Gonzalez's sexual harassment, and she did not discipline Gonzalez.

45. Around mid-2017, Director Patricia Wood took over as the new HHS Director for the day shift.

46. When Wood took over, Supervisor Garcia informed her of the sexual harassment complaints made by Lopez against Gonzalez.

47. When informed of the harassment, Wood responded, "I don't want to deal with this."

48. Wood also began commenting to Garcia that Lopez "makes a lot of complaints" and inquired about her job duties.

49. Within a matter of days after hearing about Lopez's complaints of sexual harassment, Wood began asking Supervisor Garcia to assign Lopez more work on an almost daily basis and required Lopez to complete her linen duties by noon, when historically housekeepers were given eight hours to complete their linen duties.

50. In 2017, Gonzalez continued to subject Lopez to sexual harassment nearly every time they encountered one another in the workplace.

51. On one occasion in 2017 witnessed by another employee, Gonzalez approached Lopez from behind and grabbed her buttocks.

52. In response, Lopez slapped Gonzalez.

53. Gonzalez responded, "Oh why so aggressive?"

54. Around mid-2017, while the harassment against Lopez was ongoing, an HHS manager convened a meeting with some of the housekeepers to discuss complaints they had about Wood.

55. During the meeting, Lopez complained to the manager that Wood had not taken any action in response to Lopez's complaints of sexual harassment.

56. Lopez also complained that Wood was retaliating against Lopez by assigning her more work because she had lodged sexual harassment complaints.

57. On or around August 11, 2017, Lopez and Gonzalez were walking towards each other down the same hallway at the Salt Lake Regional Medical Center.

58. When Gonzalez approached Lopez, he reached his hand out and attempted to grab Lopez's vagina.

59. Although Lopez tried to maneuver out of the way, Gonzalez's hand touched her thigh.

60. Lopez immediately started shouting at Gonzalez, but Gonzalez only laughed in response.

61. Another HHS employees witnessed the incident and immediately reported it to an HHS manager.

62. Lopez also informed Supervisor Garcia about the incident by phone and in person.

63. Later that same day, Lopez authored a letter complaining about the harassment and the failure by HHS management to take adequate measures to address the harassment.

64. Lopez slid the letter under Wood's office door on August 11, 2017.

65. On or around August 14, 2017, Lopez asked Wood if she had received the letter.

66. Wood responded that she had but said nothing further on the matter.

67. Several weeks then passed without Wood or any other manager taking any substantive action to address Lopez's complaints of sexual assault and harassment.

68. When HHS management did nothing to stop the sexual harassment that Lopez reported, Lopez realized her employer would do nothing to protect her from sexual harassment and retaliation.

69. When, in addition to the unrelenting sexual harassment, Lopez was sexually assaulted by Gonzalez and nothing was done in response, Lopez's working conditions became intolerable and hopeless.

70. On or around September 8, 2017, Lopez submitted her resignation letter.

71. The letter stated she was resigning due to the sexual harassment by Gonzalez and HHS's refusal to address the harassment.

72. The letter also stated Lopez no longer felt secure or comfortable in the workplace because of the sexual harassment.

### Other Aggrieved Individuals

73. The EEOC seeks relief on behalf of Lopez as well as a class of other aggrieved individuals.

74. Like Lopez, a class of other female employees were subjected to regular sexual harassment while working for HHS.

75. Like Lopez, a class of other female employees have been subjected to unwelcome sexual comments and sexual innuendo while working for HHS.

76. For example, on one occasion in 2017, Gonzalez propositioned a female employee by asking when the next local Mexican dance was so he could go with her.

77. Gonzalez also followed a different female employee around on nearly every shift in 2017 telling her he loved her, calling her "mi amor," and trying to kiss her.

78. Like Lopez, a class of other female employees have been subjected to unwelcome sexual conduct and/or touching by Gonzalez while working for HHS.

79. For instance, on several occasions in 2017, Gonzalez placed his nose as close as possible to a female employee's breasts and attempted to smell her shirt.

80. Gonzalez also attempted to hug this employee on several other occasions without her permission.

81. On multiple occasions in 2017, Gonzalez attempted to put his arms around a different female employee and touch her breasts.

82. Like Lopez, while employed by HHS, a class of other female employees complained to HHS management about sexual harassment and retaliation.

83. While employed by HHS, a class of other female employees specifically complained about sexual harassment by Gonzalez.

84. Despite complaints from several female employees about sexual harassment by Gonzalez, HHS failed to take adequate corrective and remedial steps to correct or prevent the harassment and retaliation.

85. HHS also retaliated against a class of employees after they complained about harassment or retaliation, including subjecting them to adverse terms and conditions of employment and retaliatory discharge.

86. For example, nine days after one female employee reported sexual harassment by Gonzalez to her supervisor, HHS terminated her employment.

87.  A different female employee was discharged by HHS approximately one week after she complained about sexual harassment by Gonzalez to her supervisor and another manager.

## STATEMENT OF CLAIMS

88.  Since at least August 2016 to present, HHS has engaged in unlawful employment practices against Lopez and a class of other aggrieved individuals in violation of Sections 703(a) and 704(a) of Title VII, 42 U.S.C. §§ 2000e-2(a), 2000e-3(a).

## FIRST CLAIM FOR RELIEF
### Harassment/Hostile Work Environment
### (42 U.S.C. § 2000e-2(a))

89.  The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

90.  The EEOC brings this first claim for relief on behalf of Lopez and a class of other aggrieved female employees.

91.  HHS discriminated against Lopez and a class of other aggrieved female employees in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1), by sexually harassing them and creating a hostile work environment because of their sex, female.

92. The offensive conduct described in the preceding paragraphs was unwelcome and was sufficiently severe or pervasive to alter the terms and conditions of employment for Lopez and a class of other aggrieved female employees.

93. HHS knew of, or in the exercise of reasonable care should have known of, the hostile or offensive work environment suffered by Lopez and a class of other aggrieved female employees because of their sex, female.

94. Female employees working at HHS complained to management and Human Resources about the sexually hostile or offensive work environment.

95. Despite these complaints, HHS failed to take reasonable measures to prevent and promptly correct discriminatory and sexually harassing behavior in the workplace.

96. The effect of the practices complained of in the foregoing paragraphs has been to deprive Lopez and a class of other female aggrieved individuals of equal employment opportunities and otherwise adversely affected their status as employees because of their sex.

97. The unlawful employment practices complained of in the foregoing paragraphs were intentional.

98. The unlawful employment practices complained of in the foregoing paragraphs were done with malice or reckless indifference to the federally protected rights of Lopez and a class of other female employees of HHS.

### SECOND CLAIM FOR RELIEF
### Retaliation
### (42 U.S.C. § 2000e-3(a))

99. The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

100. The EEOC brings this second claim for relief on behalf of Lopez and a class of other aggrieved employees.

101. HHS unlawfully retaliated against Lopez and a class of aggrieved employees in violation of 704(a) of Title VII, 42 U.S.C. § 2000e-3(a), by discriminating against them for opposing and/or complaining about unlawful employment practices, including sexual harassment.

102. Lopez and the class of aggrieved employees who opposed or complained about the sexual harassment and/or the hostile work environment at HHS suffered adverse terms and conditions of employment and discharge because they engaged in protected activity by opposing or complaining about the sexual harassment.

103. The effect of the practices complained of above has been to deprive Lopez and a class of aggrieved individuals of equal employment opportunities and otherwise adversely affect their status as employees because they opposed and complained about unlawful employment practices.

104. The unlawful retaliatory employment practices complained of above were intentional.

105. The unlawful retaliatory employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Lopez and class of aggrieved individuals who were employees of HHS.

### THIRD CLAIM FOR RELIEF
**Constructive Discharge**
**42 U.S.C. § 2000e-2(a)**

106. The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

107. The EEOC brings this third claim for relief on behalf of Lopez.

108. Lopez was constructively discharged in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a)(1).

109. HHS's discriminatory acts made working conditions so difficult Lopez reasonably felt compelled to resign.

110. The effect of the practices complained of in the foregoing paragraphs has been to deprive Lopez of equal employment opportunities and otherwise adversely affected her status as an employee because of her sex.

111. The unlawful employment practices complained of above were intentional.

112. The unlawful employment practices complained above were done with malice or reckless indifference to Lopez's federally protected rights.

### PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from engaging in any employment practice which discriminates on the basis of sex, including sexual harassment and constructive discharge, and from retaliating against employees who oppose unlawful employment practices.

B. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for women and for individuals who oppose unlawful employment practices, and which eradicate the effects of the Defendant's past and present unlawful employment practices, including sex discrimination, sexual harassment, and retaliation.

C. Order Defendant to make whole Lopez and other aggrieved employees by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to lost wages, benefits, and compensation for all monetary losses of Lopez and other aggrieved employees.

E. Order Defendant to make whole Lopez and other aggrieved employees by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

F.   Order Defendant to pay Lopez and other aggrieved employees punitive damages for Defendant's malicious and reckless conduct, as described above, in amounts to be determined at trial.

G.   Grant such further relief as the Court deems necessary and proper in the public interest.

H.   Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Karla Gilbride
General Counsel

Christopher Lage
Deputy General Counsel

Gwendolyn Reams
Associate General Counsel

Mary O'Neill
Regional Attorney

Laurie Jaeckel
Assistant Regional Attorney

/s/ *Michael Yeabsley*
Michael Yeabsley
Trial Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
3300 N. Central Ave., Suite 690
Phoenix, AZ 85012

**PLEASE NOTE**: For purposes of service upon the EEOC, it is sufficient that pleadings, notices, and court documents be served upon the Trial Attorney. Duplicate service is not required on the General Counsel, Deputy General Counsel, and Associate General Counsel in Washington, D.C.